UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ULBER MORALES, JULIO OLIVAR, | : | |
| HISAI RAMIREZ, ALEJANDRO | : | |
| RODRIGUEZ, CRISTIAN RAMIREZ, | : | |
| and MISAEL MORALES, | : | **Civil Case Number** |
| *Plaintiffs*, | : | |
| | : | **3:14-cv-01333 (VLB)** |
| v. | : | |
| | : | **November 29, 2016** |
| GOURMET HEAVEN, INC., | : | |
| CHUNG CHO, and YONG CHO | : | |
| *Defendants*. | : | |
| | : | |

### Memorandum of Decision

Plaintiffs Ulber Morales, Julio Olivar, Hisai Ramirez, Alejandro Rodriguez, Cristian Ramirez, and Misael Morales (collectively, "Plaintiffs") brought claims for minimum wage and overtime violations under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58, *et. seq.*, against Defendants Gourmet Heaven, Inc. and Chung Cho (collectively, "Defendants").[1] Plaintiffs now move for partial summary judgment against Defendants on these claims. The Court also *sua sponte* addresses Plaintiffs' wage payment claim under Conn. Gen. Stat. §§ 31-71 and 31-72 because it relates to the award of actual and liquidated damages for which the Plaintiffs seek judgment. For the following reasons, the Court GRANTS

---

[1] Plaintiffs also sued Yong Cho and asserted claims against all defendants under Connecticut's Wage Payment Law, Conn. Gen. Stat §§ 31-71, 31-72; retaliation claims under the FLSA; and claims for retaliation in violation of Conn. Gen. Stat. § 31-51q. This memorandum does not address the claims against Yong Cho or the retaliation claims against all defendants.

Plaintiffs' motion for partial summary judgment and awards damages in the amount of $175,664.24.

## Facts

The following undisputed facts are drawn primarily from Plaintiffs' 56(a)1 Statement.[2]  As the Defendants did not oppose the Plaintiffs' Motion for Summary Judgment, the Court also considers all facts from the Amended Complaint to be undisputed where they are either admitted by the Defendants or supported by evidence.  See Fed. R. Civ. P. 56(e).

### I.    Defendants

Gourmet Heaven, Inc. ("Gourmet Heaven") is a Connecticut corporation that operated at the relevant time two grocery stores in New Haven, CT.  [Dkt. 64 ¶¶ 11-12; Dkt. 85 ¶¶ 11-12; Dkt. 93, Ex. 10 ¶ 3].  Gourmet Heaven purchased food and other products originating outside Connecticut, generating more than $500,000 in annual revenue.  [Dkt. 64 ¶¶ 13-14; Dkt. 85 ¶¶13-14].  The company also hired, paid, supervised and scheduled the work performed by the Plaintiffs.  [Dkt. 64 ¶15; Dkt. 85 ¶15].

Chung Cho ("Cho") is the President and sole owner of Gourmet Heaven. [Dkt. 64 ¶¶16-17; Dkt. 85 ¶¶16-17].  He is personally primarily responsible for all operations of the business, including hiring and firing employees, wage payments,

---

[2] **The Court has reviewed Plaintiff's 56(a)1 Statement to ensure "that each statement is, in fact, supported by admissible evidence." *See Wilson v. McKenna*, No. 3:12-cv-1581 (VLB), 2015 WL 5455634, at \*1 (D. Conn. Sept. 15, 2015) (observing that the failure to oppose summary judgment does not relieve the Court of its duty of ensuring that the moving party offers admissible evidence in support of its motion).**

and maintaining records.  [Dkt. 93, Ex. 10 ¶ 5; *see also* Dkt. 93, Ex. 8 ¶ 9 (Cho claimed to conduct "day to day affairs" of Gourmet Heaven as his "own business" in an unrelated civil case filed in the District of Connecticut)].  Cho paid all his employees, including the Plaintiffs in this case, in cash and did not post legally-required notices of wage and hour rights or otherwise inform his employees of their said rights.  [Dkt. 93, Ex. 10 ¶ 7].

## II.    Plaintiffs

Plaintiffs are six individuals who worked for Gourmet Heaven and Cho in one or both of the New Haven grocery stores.  *See* [*id.* at ¶ 7].  Ulber Morales ("U. Morales") worked for Defendants making deli sandwiches from July 2011 until January 2012.  [Dkt. 93. Ex. 7 ¶ 2].  U. Morales saw Cho almost every week at the grocery store.  [*Id.* at ¶ 4].  Cho determined U. Morales's pay, including a salary raise.  [*Id.* at ¶ 6].  Defendants did not keep an accurate record of Morales's hours or pay.  [Dkt. 64 ¶ 43; *see* Dkt. 93, Ex. 10 ¶ 11].

Julio Olivar ("Olivar") worked for Defendants from June 4, 2006, until December 21, 2013.  [Dkt. 93. Ex. 6 ¶ 2].  Olivar saw Cho almost every week at Gourmet Heaven, and Cho personally interviewed him, hired him, set his hours, and approved of any requested changes in his schedule.  [*Id.* at ¶ 6].  Cho also personally paid Olivar multiple times, and they negotiated Olivar's salary.  [*Id.* at ¶ 7].  Cho gave Olivar direction on flower and produce arrangements.  [*Id.* at ¶ 8].  Defendants did not keep an accurate record of Olivar's hours or pay.  [Dkt. 64 ¶ 38; Dkt. 93, Ex. 10 ¶ 11].

3

Hisai Ramirez ("H. Ramirez") worked for Defendants in the kitchen from January 2012 until December 2013. [Dkt. 93, Ex. 4 ¶ 2]. Cho personally paid H. Ramirez in cash on many occasions, and H. Ramirez signed a record of the payment. [*Id.* ¶ 5]. Defendants did not keep an accurate record of H. Ramirez's hours or pay. [Dkt. 64 ¶ 48; *see* Dkt. 93, Ex. 10 ¶ 11].

Alejandro Rodriguez ("Rodriguez") has worked for Defendants since March 2003. [Dkt. 64 ¶ 49; Dkt. 93, Ex. 11 ¶ 5]. From 2003 until 2014, he typically worked at least 72 hours per week. [*Id.* at ¶ 6]. Defendants did not keep an accurate record of Rodriguez's hours or pay. [Dkt. 64 ¶ 53; *see* Dkt. 93, Ex. 10 ¶ 11].

Cristian Ramirez ("C. Ramirez") worked for Defendants in the front of the store from September 2010 until December 2013. [Dkt. 93, Ex. 3 ¶ 2]. Cho had control over his schedule; for example, one time Cho refused to allow Ramirez to reduce his schedule to five days a week. [*Id.* at ¶ 5]. Cho also often personally paid C. Ramirez in cash. [*Id.* at ¶ 6]. Defendants did not keep an accurate record of C. Ramirez's hours or pay. [Dkt. 64 ¶ 58; *see* Dkt. 93, Ex. 10 ¶ 11].

Misael Morales ("M. Morales") worked for Defendants in the kitchen from June 2009 until December 2013. [Dkt. 93, Ex. 5 ¶ 2]. Morales observed Cho at the store almost every week, where he worked in his office "all the time," monitoring the employees on computer screens connected to cameras. [*Id.* at ¶ 4]. One time, M. Morales burned himself, and Cho told him that he would be fired if he missed more than three days of work. [*Id.* at ¶ 5]. Cho oversaw the kitchen workers' hours and determined the types of foods they cooked on any given day. [*Id.* at ¶¶ 6-7].

4

Defendants did not keep an accurate record of Morales's hours or pay.  [Dkt. 64 ¶ 63; *see* Dkt. 93, Ex. 10 ¶ 11].

### III.    Connecticut Department of Labor Investigation

Upon receiving a complaint by U. Morales, the Connecticut Department of Labor ("CT-DOL") initiated an investigation on June 24, 2013, regarding Gourmet Heaven's potential violations of Connecticut's wage and hour and wage payment laws.  *See* [Dkt. 93, Ex. 7 ¶ 9, Ex. 10 ¶ 4].  The audit period spanned from June 19, 2011 through August 2, 2013.  [Dkt. 93, Ex. 10 ¶ 11].  With respect to the Plaintiffs, the investigator concluded that Cho owed them overtime compensation in the following amounts:

| Plaintiff | Wages Due from Audit 1 |
|---|---|
| Ulber Morales | $8,291.00 |
| Julio Olivar | $7,136.63 |
| Hisai Ramirez | $12,024.00 |
| Alejandro Rodriguez | $25,708.00 |
| Cristian Ramirez | $14,982.50 |
| Misael Morales | $15,546.75 |

*See* [*id.*].

Once the investigation commenced, Cho told his employees he intended to pay them partly under the table and warned them not to speak to the CT-DOL about their wages.  [Dkt. 93, Ex. 4 ¶ 7].  He told the employees to punch in only 40 hours on their timesheets and that he would pay the rest of their earnings in cash, but he

never paid the overtime as promised.  [Dkt. 93, Ex. 3 ¶ 10].  Several Gourmet Heaven employees, including M. Morales, lived in an apartment owned by Cho.  [Dkt. 93, Ex. 5 ¶ 8].  Cho threatened the employees that "the [G]overnment would find [them] in the apartment and kick [them] out of the country" if they spoke to the CT-DOL. [*Id.*]  In addition, Cho advised Gourmet Heaven employees to run out the back door should the CT-DOL ever arrive on site.  [*Id.* at ¶ 9].   He notified them they would lose their jobs if they talked to the CT-DOL.  [Dkt. 93, Ex. 3 ¶ 10].

 The investigation revealed that Cho's records were "incomplete and out of compliance with state law standards."  [Dkt. 93, Ex. 10 ¶ 12].  After the audit concluded, the investigator counseled Cho about proper compliance with state overtime laws.  [*Id.* ¶ 12].  However, Cho continued to violate the record-keeping and overtime statutes.  *See* [*id.* at ¶ 15].   The investigator determined that the Plaintiffs were entitled to additional wages[3]:

| Plaintiff | Wages Due from Audit 2 |
|---|---|
| Ulber Morales | $0.00 |
| Julio Olivar | $2,152.92 |
| Hisai Ramirez | $144.00 |
| Alejandro Rodriguez | $1,496.32 |
| Cristian Ramirez | $190.00 |
| Misael Morales | $160.00 |

[*Id.*]

---

[3] Evidence does not indicate the time period during which the second audit occurred.

The total amount of unpaid wages Cho owed each Plaintiff was:

| Plaintiff | Wages Due (Sum of Audits) |
|-----------|---------------------------|
| Ulber Morales | $8,291.00 |
| Julio Olivar | $9,289.55 |
| Hisai Ramirez | $12,168.00 |
| Alejandro Rodriguez | $27,204.32 |
| Cristian Ramirez | $15,172.50 |
| Misael Morales | $15,706.75 |

[*Id.* ¶ 11].

As a result of his unremitting violations of state wage and hour laws, Cho was indicted and charged with multiple counts of criminal wage payment law violations, failure to maintain wage records, defrauding immigrant workers, and First Degree Larceny. [*Id.* at ¶ 18]. Cho entered into an agreement with the CT-DOL to pay back a portion of the wages due, and, as a result of a late payment, the CT-DOL submitted arrest warrants against him. [Dkt. 93, Ex. 13 at 1]. On November 17, 2014, the state court granted Cho accelerated rehabilitation on several conditions, including that Cho pay back all the money he owed as a result of the CT-DOL investigation. [*Id.* at 4]. Cho paid all the wages listed above as of April 2015 and also issued an apology letter to Plaintiffs. [Dkt. 93, Ex. 10 ¶ 20, Ex. 14].

## Discussion

I. Standard of Review

Summary judgment should be granted if "there is no genuine dispute as to

7

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). Where, as here, "a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 242 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied even if no opposing evidentiary matter is presented.'" *Id.* at 244 (emphasis omitted) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

## II.   FLSA Claims

The FLSA generally requires employers to pay employees the federal minimum wage for every hour worked and to compensate employees for hours worked in excess of forty hours at a rate of one and one-half times the regular rate.[4]

---

[4] The Court uses the word "generally" because certain employment relationships are exempt. An FLSA exemption, however, is an affirmative defense. *Darowski v. Wojewoda*, No. 3:15-cv-00803 (MPS), slip-op. at 10 (D. Conn. Aug. 7, 2016); *see Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002). No exemption is at issue here. Defendants have failed to assert any affirmative defenses in their answer, *see* [Dkt. 85], and the failure to plead an affirmative defense results in waiver. *See Probatter Sports, LLC v. Sports Tutor, Inc.*, 2015 WL

29 U.S.C. § 207(a)(1).  A plaintiff claiming unpaid minimum or overtime wages under the FLSA must show that: (1) the plaintiff engaged in commerce or is employed by an enterprise engaged in commerce; (2) the defendant employed the plaintiff; and (3) the plaintiff performed work for which he was not properly compensated.  *See Zhong v. Aug. Aug. Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008).  The Court addresses each element in turn.

### A.  Commerce Element

The FLSA's minimum wage and overtime provisions apply to an employee who is: (1) "engaged in commerce or in the production of goods for commerce"; or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207(a)(1).  "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively."  *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009).  A plaintiff bears the burden of proving either individual or enterprise coverage.  *See Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 343-44 (E.D.N.Y. 2014) (ruling that "whether Plaintiffs can establish [FLSA] coverage is an element of Plaintiffs' claim").

In this case, the employees are protected by the FLSA based on enterprise coverage, because the undisputed record shows that Gourmet Heaven constituted

---

4390055, at *3 (D. Conn. July 15, 2015) (observing that "a general denial does not sufficiently plead an affirmative defense, and 'failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case'") (quoting *Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984)); *Archie v. Grand Cent. P'ship,* 997 F. Supp. 504, 536 (S.D.N.Y. 1998).

an enterprise engaged in interstate commerce.[5]  "Commerce" is defined under the FLSA as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  The FLSA defines an "enterprise," *inter alia*, as "the related activities performed . . . by any person or persons for a common business purpose . . . ."  29 U.S.C. § 203(r)(1); *Jacobs v. New York Foundling Hosp.*, 577 F.3d at 97.  An "enterprise engaged in commerce" is one that (i) "has employees engaged in commerce or in the production of goods for commerce, or that has employees *handling, selling or otherwise working on* goods or materials that have been *moved in or produced for commerce* by any person"; and (ii) has "annual gross volume of sales made or business done . . . not less than $500,000."  29 U.S.C. § 203(s)(1)(A) (emphases added).  It is undisputed that Gourmet Heaven purchased and used food and other products originating outside Connecticut and generated more than $500,000 in sales annually.  [Dkt. 64 ¶¶ 13-14; Dkt. 85 ¶¶13-14].

### B. Employer-Employee Element

Under the FLSA, an "employee" is "any individual employed by an employer," and an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. §§ 203(d), (e)(1).  These definitions should be broadly construed to achieve the statute's goal of "outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (quoting *Tony & Susan Alamo Found. V. Sec'y of Labor*, 471 U.S. 290,

---

[5] The Plaintiffs have not argued a theory of individual coverage.

296 (1985)).  The determination of an "employer-employee relationship" is founded on "economic reality rather than technical concepts."  *Id.* at 104 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961).

The Second Circuit uses a four-factor test to determine "economic reality," which evaluates whether the employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined rate and method of payment, and (4) maintained employment records."  *Id.* at 104-05 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  This test is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."  *Id.* at 104.

### i.   Employer-Employee Element as to Gourmet Heaven

It is undisputed that all Plaintiffs worked for Gourmet Heaven and that persons acting on behalf of Gourmet Heaven hired, scheduled the work hours of, supervised and paid the Plaintiffs.  [Dkt. 64 ¶ 15; Dkt. 85 ¶ 15].  Therefore, Gourmet Heaven was their "employer" under the FLSA.

### ii.   Employer-Employee Element as to  Cho

Defendant Cho is also individually liable as an "employer" under the FLSA. In some circumstances, an individual may be personally liable for damages as an "employer" when that individual is "engaged in the culpable company's affairs to a degree that it is logical to find him liable to plaintiff employees."  *Irizarry v. Catsimatidis*, 722 F.3d at 117.  The Second Circuit traditionally considers: (1) the individual's "operational control" over the company, (2) the four-factor "economic reality" test, and (3) the totality of the circumstances.  *Velasquez v. U.S. 1 Farm*

*Market, Inc.*, 3:13-cv-00643 (GWC), slip-op. at 6 (D. Conn. May 3, 2016) (citing *Herman v RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

"A person exercises operational control over employees if his or her role within the company, and the decisions, it entails, directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d at 110. Relevant considerations are the individual's "direct control over employees" as well as "evidence showing [an individual's] authority over management, supervision, and oversight of [a company's] affairs in general." *Id.* Cho was the President and sole owner of Gourmet Heaven, and he personally hired all managers and supervisory staff. [Dkt. 64 ¶¶16-17, 20; Dkt. 85 ¶¶16-17, 20]. He invested funds in Gourmet Heaven, negotiated the lease, contracted with food and equipment supply vendors, and conducted the banking and financial affairs of the business. [Dkt. 93, Ex. 8 ¶ 9]. In addition, Cho managed the daily affairs, such as directing employees how to arrange flowers and produce in the front of the store. [Dkt. 93, Ex. 6 ¶ 8]. Such evidence establishes that Cho's role in Gourmet Heaven directly affected the employees, demonstrating his "operational control."

The undisputed facts indicate that Cho's role also satisfies all factors of the "economic reality" test as he was personally responsible for all operations of the business, including (1) hiring and firing employees, (2) scheduling employee hours, (3) wage payments, and (4) maintaining records. *See Irizarry v. Catsimatidis*, 722 F.3d at 104-05; [Dkt. 93, Ex. 5 ¶ 6, Ex. 10 ¶ 5]. Notably, Cho admitted on the record in another case before this Court that he runs the "day-to-day affairs" of

12

Gourmet Heaven.   [Dkt. 93, Ex. 8 ¶ 9].   These facts establish that Cho's role at Gourmet Heaven clearly satisfies the "economic reality" test.

Upon considering the totality of the circumstances, the Court rules that that Cho is an "employer" under the FLSA and is individually liable for the damages owed to the Plaintiffs under either the operational control or economic reality standard.

### C. Wage Payment Violation Element

The FLSA awards back pay for unpaid minimum wage and overtime compensation as well as liquidated damages.   29 U.S.C. § 216(b).   Evidence from affidavits and the CT-DOL investigation establishes that Defendants failed to pay Plaintiffs wages as required under the FLSA.   *See, e.g.*, [Dkt. 93, Ex. 10 ¶ 14].   Cho has also been subject to state criminal prosecution for his failure to pay his employees minimum wage and overtime, his failure to keep records, defrauding immigrant laborers, and larceny.   *See* [Dkt. 93, Ex. 13 at 1].   The parties do not dispute this issue.

## III.   CMWA Claims

The Connecticut Minimum Wage Act (CMWA) provides wage and overtime protections similar to the FLSA, except that it does not require the employee or enterprise to be engaged in interstate commerce.   *See Tapia v. Mateo*, 96 F. Supp. 3d 1, 5 (D. Conn. 2015); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 263 n.2 (D. Conn. 2002).   Like the FLSA, the overtime provision requires that employers pay employees one and one-half times the employer's regular rate for any hours over forty hours per week.   Conn. Gen. Stat. § 31-76c.   The definition of "employer" is

"any person, partnership, corporation, limited liability company or association of persons acting directly as, or in behalf of, or in the interest of an employer in relation to employees." Conn. Gen. Stat. § 31-58(e).

It is undisputed that Gourmet Heaven is an "employer" under Conn. Gen. Stat. § 31-58(e) because Gourmet Heaven hired, paid, supervised, and scheduled Plaintiffs' hours of employment. [Dkt. 64 ¶ 15; Dkt. 85 ¶ 15].

Cho is also an "employer" under the CMWA, although the standards for determining individual liability is somewhat different than that of the FLSA. The Connecticut Supreme Court has declined to adopt the "economic reality" test for this purpose, and instead asks whether the individual "possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler v. Hartford Tech. Inst.*, 704 A.2d 222, 227 (Conn. 1997). As noted above, the evidence supports the conclusion that Cho set the hours and controlled the wages of the Gourmet Heaven employees as he hired, scheduled the work hours of, managed and paid the Gourmet Heaven employees. *See, e.g.*, [Dkt. 93, Ex. 10 ¶ 5]. Accordingly, Cho is individually liable as an "employer" under the CMWA.

As aforementioned, the affidavits and CT-DOL investigation establish that the Defendants owed the Plaintiffs unpaid wages.

IV.   <u>Damages</u>

The FLSA and CMWA permit a plaintiff to recover unpaid minimum wages, unpaid overtime compensation, and liquidated damages. *See* 29 U.S.C. § 255;

Conn. Gen. Stat. § 31-68.  Plaintiffs seek to recover presently unpaid minimum wage, overtime, and liquidated damages for their entire employment under both the federal and state statutes.

As a condition of accelerated rehabilitation, Cho paid the Plaintiffs their unpaid wages accrued during the CT-DOL audit periods.  [Dkt. 93, Ex. 10 ¶ 20]. Plaintiffs, therefore, do not seek actual damages for these amounts.  However, Plaintiffs Olivar, Rodriguez, C. Ramirez, and M. Morales worked for Gourmet Heaven for longer periods than that of the investigation and seek minimum wage and overtime for the entire time in which they worked, not included in the state audit and not paid in satisfaction of the state criminal judgment.  *See* [Dkt. 93 (Mot. for Summ. J.) at 26, 28, 29].  In addition, all Plaintiffs seek liquidated damages for the audit period amounts.

The damages requests of Olivar, Rodriguez, C. Ramirez, and M. Morales regarding these earlier periods raise statute of limitations, equitable tolling and preemption issues, which the Court will now address.

### A.  Statute of Limitations under the FLSA and CMWA

The FLSA's statute of limitations is two years from the date the "cause of action accrues," unless the Plaintiff can show that the "cause of action ar[ose] out of a willful violation," in which case the statute of limitations is three years.  29 U.S.C. § 255(a).  A "'cause of action accrue[s]' when the defendant 'fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends.'"  *Darowski v. Wojewoda*, slip-op. at 11 (quoting 29 C.F.R.§ 790.21(b)).  Therefore, a new cause of action arises after each pay day.

The CMWA's statute of limitations is similarly two years, but with no exception.  *See* Conn. Gen. Stat. § 52-596.  The date of "accrual" under Connecticut state law is "when an employer refuses to compensate an employee according to the terms of an express or implied employment contract."  *Warzecha v. Nutmeg Cos.*, 48 F. Supp. 2d 151, 158 (D. Conn. 1999); *Burns v. Koellmer*, 527 A.2d 1210, 1218 (Conn. App. Ct. 1987) ("The plaintiff's cause of action did not arise until the defendant breached the agreement by refusing to fully compensate the plaintiff for her services.").

Plaintiffs filed the complaint on September 15, 2014.  A two-year statute of limitations would limit damages to the period on or after September 15, 2012, and a three-year statute of limitations would extend recovery to September 15, 2011.  Instead, Plaintiffs seek to recover damages for the *entire time* of their respective employments.[6]  Plaintiffs argue that Defendants have waived the affirmative defense that the statute of limitations bars recovery.  *See* [Dkt. 93 (Mot. for Summ. J.) at 26].  Defendants have indeed failed to raise this issue with the Court in any of their answers, objections to motions, or hearings.

---

[6] U. Morales worked from July 2011 until January 2012.  [Dkt. 93, Ex. 7 ¶ 2, Ex. 12; *but see* Dkt. 64 ¶ 39 (Amended Complaint cites a time period that extends beyond the dates of Morales's employment as stated in his Affidavit, of which the latter coincides with the CT-DOL Wage Sheet)].  Olivar worked from June 4, 2006, until December 21, 2013.  [Dkt. 93, Ex. 6 ¶ 2; Dkt. 64 ¶ 34].  H. Ramirez worked from January 2012 until December 2013.  [Dkt. 93, Ex. 4 ¶ 2; *but see* Dkt. 64 ¶ 44].  Rodriguez worked from March 2003 until present.  [Dkt. 93, Ex. 11 ¶ 5, Dkt. 64 ¶ 49].  C. Ramirez worked from September 2010 until December 2013.  [Dkt. 64 ¶ 54; Dkt. 93, Ex. 3 ¶ 2].

"The contention that all or part of an action is barred by the statute of limitations is an affirmative defense.  If not raised by the defendant in his answer, it is waived."  *Archie v. Grand Cent. P'ship*, 997 F. Supp. 504, 536 (S.D.N.Y. 1998) (quoting *Wade v. Orange Cty. Sheriff's Office*, 844 F.2d 951, 955 (2d Cir. 1998)); *see also Romprey v. Safeco Ins. Co. of Am.*, 77 A.3d 726, 737 n.11 (Conn. 2013) (in a motorist insurance case, "The burden of proving an affirmative defense is, of course, on the party raising it, and we must presume that the defendant had a good faith basis to raise this defense").  Plaintiffs in *Archie v. Grand Cent. P'ship*, who were homeless and formerly homeless persons working in the Pathways to Employment Program, filed FLSA and New York State Minimum Wage Act ("NYSMWA") claims on February 1, 1995, alleging they were paid sub-minimum wage and denied overtime during employment periods dating as early as 1990.  *Id.* at 511.  Defendants failed to raise a statute of limitations defense until their joint trial memorandum, in which they asked for leave to amend their answer to assert the affirmative defense.  *Id.* at 536.  Then District Judge Sotomayor denied leave to amend, stating, "A court plainly has discretion, however, to deny . . . where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the other party."  *Id.*  The court then determined the defendants violated both the FLSA and NYSMWA and ordered damages in back pay as well as liquidated damages.

In this case, Defendants have not raised the statute of limitations defense *at all* despite being represented by counsel and despite the Plaintiffs' having raised it.  The Court concludes the Defendants have waived their right to limit damages to

the period within the appropriate statute of limitations.  Therefore, it is unnecessary to determine whether a two-year or three-year statute of limitations would apply under the FLSA.[7]

The Court is not obligated to raise a statute of limitations defense *sua sponte* as it is not a jurisdictional issue.  *See Day v. McDonough*, 547 U.S. 198, 205, 209 (2006) (holding "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition"); *Sanchez v. Truse Trucking, Inc.*, 74 F. Supp. 3d 716, 719 n.2 (M.D.N.C. 2014) (electing not to raise a statute of limitations issue *sua sponte* in an FLSA case).  Were the Court to raise such an issue *sua sponte*, Plaintiffs may nonetheless be entitled to apply equitable tolling to recover damages outside of the statute of limitations period.

Equitable tolling is sometimes appropriate where a plaintiff's federal and state minimum wage and overtime compensation claims would otherwise be time-barred.  *Compare Darowski v. Wojewoda*, slip-op. at 11-13 (denying defendant's

---

[7] Were the Court to rule on the statute of limitations issue, the Court is confident that the three-year statute of limitations would apply.  Cho threatened his employees with termination and deportation after he learned of the CT-DOL complaint.  *See* [Dkt. 93, Ex. 3 ¶ 10, Ex. 5 ¶ 8].  He further advised the employees only to punch in 40 hours and promised to pay the rest of their wages in cash – this was a promise he did not keep.  [Dkt. 93, Ex. 3 ¶¶ 10-11].  Even after the investigator spoke to Cho about how to properly comply with the state overtime laws, Cho continued to violate them and did so while a criminal case was pending against him.  [Dkt. 93, Ex. 10 ¶¶ 12, 15].  This conduct would certainly constitute a "willful violation" of the FLSA.  *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (An employer "willfully" violates the FLSA when he "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute").

motion to dismiss in part based on a "reasonable inference" that equitable tolling should apply), *with Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 70-71 (2d Cir. 2014) (finding plaintiff did not merit equitable tolling based on her DOL filing and physical illness), *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012) (requiring plaintiff to show "some sort of deception" before tolling the statute of limitations). The standard is an onerous one for the plaintiff, because "[t]o qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented [him] from filing [his] claim on time, and that [he] acted with reasonable diligence throughout the period [he] seeks to toll." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d at 71 (quoting *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013)).

Equitable tolling is not relevant here for two reasons. First, Defendants knew the dates of their employees' employment and were put on notice that Plaintiffs seek "*all* compensation due and owing to them by the Defendants," yet they still failed to invoke their affirmative defense. *See* [Dkt. 64 at 15 (emphasis added)]. In *Darowski v. Wojewoda*, the court addressed equitable tolling only *after* the Defendant moved to dismiss, in part, on the basis that the Plaintiff's claims were time-barred. Slip-op. at 5. Even in *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d at 88—a case where the court entered default judgment against the Defendant— the parties previously litigated the statute of limitations issue during the summary judgment stage and the court ruled on the issue. *See Gunawan v. Sake Sushi Rest.*, No. 09-cv-5018 (ALC), 2011 WL 3841420, at 1 (E.D.N.Y. Aug. 26, 2011).

Second, the Court elects not to raise the statute of limitations issue *sua sponte*. While it is possible Plaintiffs realized they had valid FLSA and CMWA claims upon the initiation of the CT-DOL investigation and Cho's criminal state charges, Cho's threats of deportation and employment termination most certainly dissuaded Plaintiffs from exercising their rights. Thus, even if the Court, *sua sponte*, were to require Plaintiffs to invoke equitable tolling, such facts militate in favor of the Plaintiffs. By like measure, it would be futile to permit Defendants to amend their answer to assert the statute of limitations affirmative defense because it would be unavailing.

Therefore, the time period in which Plaintiffs may recover unpaid wages and liquidated damages spans the entirety of their employment at Gourmet Heaven. The Court awards damages under the statute that provides the greater amount of recovery. *See Velasquez v. U.S. 1 Farm Market, Inc.*, slip-op. at 11; *Pau v. Chen*, 2015 WL 6386508, at *8. In this case, the Court will award damages pursuant to the CMWA because Connecticut has a higher minimum wage than the FLSA.

### B. Actual Damages

The Plaintiffs worked for Gourmet Heaven for a total period of 2003 until 2014. During this time, the FLSA and CMWA minimum wages periodically increased.[8] Plaintiffs Julio Olivar, Alejandro Rodriguez, Cristian Ramirez, and

---

[8] **The FLSA changed as follows: $5.15 per hour effective September 1, 1997; $5.85 per hour effective July 24, 2007; $6.55 per hour effective July 24, 2008; and $7.25 effective July 24, 2009. Dept. of Labor, Wage and Hour Div.,** *History of Changes to the Minimum Wage Law*, **https://dol.gov/whd/minwage/coverage.htm. The Connecticut Minimum Wage changed as follows: $7.10 effective as of January 1, 2004; $7.40 effective as of January 1, 2006; $7.65 effective as of January 1, 2007;**

Misael Morales seek to recover unpaid minimum wage and overtime damages for the total time period during which they worked for which they have not been compensated.[9]  In making this argument, Plaintiffs incorrectly combine minimum wage and overtime payments, and calculate they were paid "below minimum wage" by dividing the total amount of payment received for a workweek by the number of hours worked.[10]

Retaining a distinction between minimum wage payments and overtime payments is critical to a proper assessment of damages, because Plaintiffs can recover under both federal and state law for overtime but cannot do so for minimum wage.  The Second Circuit noted that § 18(a) of the FLSA expressly allows states to mandate greater overtime benefits and joined with all other Circuits in reaching "the same conclusion—state overtime wage law is not preempted by the . . . FLSA." *Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991).  This same principle

---

$8.00 effective as of January 1, 2009; $8.25 effective as of January 1, 2010; $8.75 effective as of January 1, 2014.  *See* Conn. Gen. Stat. ¶ 31-58(i).

[9] Plaintiffs U. Morales and H. Ramirez do not seek actual damages because they did not work outside the scope of the DOL investigation, and therefore they have recovered their unpaid wages by way of the Accelerated Rehabilitation determination.  *See* [Dkt. 93, Ex. 13].

[10] For example, Olivar determined that he was paid an average of $5.55 (when the Connecticut minimum wage was $7.40 at the time) for his first week of work in November 2006.  [Dkt. 64 ¶ 36.]  He made this determination by dividing his weekly paycheck of $400 by the 72 hours he worked.  However, the minimum wage salary owed to Olivar was $296 ($7.40 per hour x 40 weeks), and Olivar was indeed paid that amount.  What he was not paid was a substantial portion of his overtime payments due, totaling $251.20.  Olivar was paid $104 in overtime ($400 - $296).  The total amount he should have been paid in overtime was one and a half times minimum wage for a total of 32 weeks ($7.40 x 1.5 x 32) = $355.20.  Therefore, the amount owed to Olivar was $251.2 ($355.2 - $104).

precludes Plaintiffs from obtaining "double recovery" in back pay, because states, like Connecticut, with a higher minimum wage "necessarily will subsume their award under the FLSA."  *Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176 (PAE), slip-op. at 31 (S.D.N.Y. June 9, 2016); *see also Velasquez v. U.S. 1 Farm Market, Inc.*, slip-op. at 11 (D. Conn. May 3, 2016) ("Plaintiffs are entitled to damages for their unpaid minimum wages and overtime under either the FLSA or the CMWA.").  As such, Plaintiffs can recover under Connecticut's higher minimum wage.  *See Velasquez v. U.S. 1 Farm Market, Inc.*, slip-op. at 11; *Pau v. Chen*, No. 3:14cv841(JBA), 2015 WL 6386508, at *8 (D. Conn. Oct. 21, 2015) (awarding damages "pursuant to the statute that provides the greater amount of damages," the CMWA).

In general, the employee bears the burden to show he was not properly compensated for the work he performed.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds*.  This is not the case, however, when the employer fails to keep adequate employment records.  *See id.* at 687-88.  In the latter circumstance, the employee need only provide "sufficient evidence to show the amount and extent of that work [improperly compensated] as a matter of just and reasonable inference."  *Id.* at 687; *Velasquez v. U.S. 1 Farm Market, Inc.*, slip-op. at 4.  Upon this showing, the burden then shifts to the employer to show "the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687-88.

Here, the CT-DOL investigation made two key determinations: (1) that Gourmet Heaven employees were not paid certain overtime premiums, and (2) that

Cho's records were incomplete and out of compliance with state law.  [Dkt. 93, Ex. 10 ¶ 11].  These findings would, in theory, be sufficient to shift the burden to the Defendants to show the "precise amount of work performed" or "negative the reasonableness of the inference to be drawn from the employee's evidence."  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687-88.

However, the Plaintiffs have not satisfied their initial burden to provide "sufficient evidence" for the court to make a "just and reasonable inference."  *See id.* at 687.  The Plaintiffs' initial burden under *Anderson v. Mt. Clemens Pottery* is minimal so as not to "penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work."  *Id.* at 687; *Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012).  Likewise, the FLSA is designed to prevent "the employer [from] keep[ing] the benefits of an employee's labors without paying due compensation."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687.  Plaintiffs may satisfy this burden "through estimates based on [their] own recollection."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (finding a declaration estimating the average hours of uncompensated overtime each week to be sufficient).  While the evidence may be minimal, it must nonetheless be credible.  *Daniels v. 1710 Realty LLC*, 497 F. App'x at 139.  A district court may not "just accept plaintiff's statement of the damages." *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014) (internal citations omitted); *see Freeman v. Blake Co.*, 84 F. Supp. 700, 704 (1st Cir. 1949) (commenting that "false reporting by the employee, [] silence by her and [] reliance by the employer on that reporting and silence" do not constitute estoppel for

calculating FLSA damages).  Overly vague or speculative evidence is insufficient to satisfy the Plaintiffs' minimal burden.  *See id.*; *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88-89 (2d Cir. 2003) (finding evidence insufficient where one employee testified that he "usually worked" with plaintiff and they had "basically the same hours").

The only evidence Plaintiffs have offered is the CT-DOL audit investigation of the period of July 19, 2011, through August 2, 2013, which is shorter than the period for which they seek damages.  As a consequence, the Court is unable to reasonably infer the amount.  Plaintiffs Olivar, C. Ramirez, and M. Morales have not submitted any affidavits or other evidence estimating (1) the average number of hours they worked per week during the period prior to the CT-DOL investigation, and (2) the extent to which they were not paid.  It would not be a "just and reasonable inference" to calculate the average amount of overtime wages owed to each Plaintiff during the CT-DOL investigation period and apply it retroactively to past dates as the Plaintiffs suggest; such a calculation does not take into account the minimum wage and overtime payment changes that occurred overtime and the resulting difference in unpaid wages.  Without knowing (1) the approximate number of hours Plaintiffs worked and (2) the number of hours or amount of money Plaintiffs were paid (or not paid) for the given time periods, the Court cannot make an appropriate damages assessment.  *See Velasquez v. U.S. Farm 1 Market, Inc.*, slip-op. at 11-12; *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d at 89-90.

The Amended Complaint documents a few examples of average hours each employee worked and lists payments made to each Plaintiff for the relevant period:

24

- **Olivar was paid $400 for working 72 hours during the first week in November 2006, [Dkt. 64 ¶ 36];**

- **Rodriguez was paid $240 for working 72 hours during the first week of December 2003, [*id.* at ¶ 51];**

- **C. Ramirez was paid $240 for working 72 hours during the first week of October 2010, [*id.* at ¶ 56];**

- **M. Morales was paid $340 for working 72 hours during the first week of October 2009, [*id.* at ¶ 61].**

While the Court can rely on an employee's estimate of the hours he worked and wages he was paid, evidence must be credible.  Evidence of the hours worked and wages paid for a single week is insufficient for the Court to justly and reasonably infer the amount of unpaid wages over a substantially longer period of time.  The Plaintiff's claim that they worked 72 hours a week is also contradicted by the CT-DOL audit, which found that C. Ramirez and M. Morales generally worked 60 hours instead of 72 hours per week, 12 fewer hours a week than the Plaintiffs now claim they worked.  There is no evidence on the record that these Plaintiffs challenged the CT-DOL audit finding.  On the contrary, there is evidence that those Plaintiffs accepted payment of the amount of unpaid wages the auditor found they owed. [Dkt. 93, Ex. 12].

The most helpful evidence Plaintiffs submitted is from Alejandro Rodriguez's Affidavit, in which he alleges that he worked 72 hours per week from 2003 until 2014 under the following conditions: "I was never paid the minimum wage or overtime by Gourmet Heaven.  For example, when I started I was paid at a rate of $3.33 per hour.  In July 2013, I was still being paid at a rate of $7.33 per hour with no overtime premium for hours over 40."  [Dkt. 93, Ex. 11 ¶ 7].  However, given that the Court has determined the Plaintiffs conflated minimum wage and overtime,

Rodriguez's statement is not useful without knowing the amount he was paid.  The Court cannot use this information to calculate unpaid wages post-investigation because Rodriguez does not indicate when, if ever, Defendants made proper payments and the time period for which he seeks damages.

Therefore, the Court determines that it will extend the recovery period past the statute of limitations given that Defendants have waived their affirmative defense, but such an extension is limited to the period of time specified in the CT-DOL wage sheets.  Plaintiffs have not provided sufficient credible evidence for the Court to make a "just and reasonable inference" as to unpaid wages that are owed prior to and subsequent to the CT-DOL investigation, and, therefore, the Court cannot award damages for those periods on the current record.

Given that Plaintiffs have recovered minimum wage and overtime compensation for the investigation period as a result of Cho's accelerated rehabilitation judgment, they are not entitled to actual damages here.  Thus, Plaintiffs' request for actual damages during this time period is DENIED without prejudice to filing within 35 days a motion for judgment that includes evidence in support thereof.  The Court will limit C. Ramirez's and M. Morales's recovery to 60 hour work weeks regarding the outstanding recovery period unless Plaintiffs can provide evidence that they are entitled to damages for 72 hour work weeks during this period.

### C. Liquidated Damages

Both the FLSA and CMWA permit the recovery of liquidated damages.  *See* 29 U.S.C. § 216(b); Conn. Gen. Stat. §§ 31-68(a), 31-72; *see also Tapia v. Mateo,* 96

F. Supp. 3d at 4.  Under the FLSA, Plaintiffs are entitled to unpaid wages "and an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  However, Defendants may avoid liquidated damages under § 260 of the FLSA "if the employer shows to the satisfaction of the court that the act or omission giving rise to such act was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260.  The employer bears the difficult burden of establishing subjective good faith and objective reasonableness by "plain and substantial" evidence.  *See Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 70-71 (2d Cir. 1997).

Although it is the Defendants who must prove good faith to avoid double damages, Plaintiffs nonetheless have submitted evidence making it clear that Defendants acted in bad faith.  First, Cho improperly recorded his employees' hours and wages and then promised, yet neglected, to pay employees under the table after the investigation commenced.  [Dkt. 93, Ex. 3 ¶ 10, Ex. 4 ¶ 7; Ex. 10 ¶ 11].  Second, Cho threatened his employees with deportation and employment termination.  [Dkt. 93, Ex. 3 ¶ 10, Ex. 5 ¶ 8].  Third, Cho continued to violate wage and overtime laws with an "open criminal case for the same offenses" even after the investigator explained how to properly comply.  [Dkt. 93, Ex. 10 ¶¶ 12, 15].  The Court will award each Plaintiff liquidated damages under the FLSA in the amount equal to that which the CT-DOL audit found each Plaintiff was owed in unpaid wages.

Whether Plaintiffs are entitled to recover liquidated damages under the CMWA in addition to the FLSA is a contested issue within this Circuit.[11]  Courts justify a liquidated damages award under federal and state statutes "when the relevant statutes serve fundamentally different purposes."  *See, e.g., Velasquez v. U.S. 1 Farm Market, Inc.*, slip-op. at 12 (internal quotations omitted).  The CMWA damages provision historically required Plaintiffs to "show evidence of bad faith, arbitrariness, or unreasonableness" in order to recover liquidated damages. *Morales v. Cancun Charlie's Rest.*, 2010 WL 7865081 at *9 (D. Conn. Nov. 23, 2010). As such, courts within this district generally awarded liquidated damages under both the FLSA and CMWA, determining the FLSA is compensatory whereas the CMWA is punitive.  *Id.*; *see Reich v. Southern New England Telecomm. Corp.*, 121 F.3d at 71 ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature."); *Pau v. Chen*, 2015 WL 6386508, at *10 ("[T]he CMWA provides for liquidated damages as a penalty.").

On October 1, 2015, the Connecticut General Assembly amended the CMWA damages provision to create, like the FLSA, a presumption of double damages and a burden on the employer to demonstrate a "good faith belief that the underpayment of such wages was in compliance with the law."  Conn. Gen. Stat. §31-72.  The Court agrees with the Plaintiffs that the legislative change should apply retroactively, as procedural statutes typically apply retroactively unless

---

[11] The Court is aware that the Honorable Leuba, former Chief Court Administrator, whose opinion this court greatly values, has indicated Connecticut courts do not award double damages under Connecticut and federal law.  *See Stokes v. Norwich Taxi, LLC*, No. 4100689S, 2006 WL 3690953 (Conn. Super. Ct. Nov. 15, 2006).

expressly stated otherwise, and laws such as this "that affect remedies and prescribe methods of obtaining redress typically fall into [the procedural] category." *Velasquez v. U.S. 1 Farm Market, Inc.*, slip-op. at 13.  The stated purpose for the legislative change is "[t]o allow employees or labor organizations to recover twice the full amount of damages associated with an employer's failure to pay wages unless the employer can demonstrate a good faith belief that it was complying with the law."  B. 914, Gen. Assemb., Jan. Sess. (Conn. 2015).

It is no longer clear that Plaintiffs should be entitled to liquidated damages under both the FLSA and CMWA as "the amendments seem to render the previous distinctions between the FLSA and the CMWA 'largely illusory.'" *Velasquez v. U.S. 1 Farm Market, Inc.*, slip-op. at 13 (quoting *Santana v. Brown*, No. 14 Civ. 4279(LGS), 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015)).  In *Velasquez v. U.S. 1 Farm Market, Inc.*, the plaintiffs, who similarly worked in the defendants' grocery store in New Haven, sought back pay and liquidated damages under the FLSA and CMWA. The plaintiffs filed a motion for summary judgment, and while it remained pending the Connecticut General Assembly amended § 31-72 to make double damages mandatory unless the exception applied.  *See id.* at 12-13.  The court determined the plaintiffs were entitled to liquidated damages under the FLSA but ordered the parties to file supplemental briefing as to whether, in relevant part, the CMWA amendment now precluded double damages under both statutes.  *Id.* at 13.  The court reflected, "The weight of authority in this district has been to support an award of liquidated damages under both the FLSA and the CMWA because the FLSA has been interpreted as a compensatory statute, whereas the CMWA was

traditionally viewed as punitive." *Id.* at 12.  However, the court opined that the new CMWA amendment would grant plaintiffs liquidated damages "for the same reasons they are entitled to such damages under the FLSA (namely, that Defendant have produced no evidence of good faith.)" *Id.* at 13.  The case subsequently settled prior to additional briefing.  [Dkt. 85].

Courts in this district have not yet determined whether plaintiffs are entitled to double liquidated damages under the FLSA and the amended CMWA.  "In determining the meaning of the statutory language as it relates to this case, the Court looks to 'the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship with existing legislation and common law principles governing the same general subject matter." *Butler v. Cadbury Beverages, Inc.*, No. 3:97-CV-2241 (EBB), 1999 WL 464527, at *2 (D. Conn. June 30, 1999) (quoting *Butler v. Hartford Tech. Inst., Inc.*, 704 A.2d 222, 225 (Conn. 1997)). It is assumed the legislature is aware of existing law when passing or amending a statute.  *See Chandler v. Cardiothoracic and Vascular Grp., P.C.*, No. X02 CV 94014718, 1998 WL 828116, at *4 (Conn. Super. Ct. Nov. 18, 1998) (interpreting statutory rule on spousal privilege in civil cases to incorporate common-law principles); *see also Dekalb Cty Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 409 (2d Cir. 2016) (quoting *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."). Connecticut courts frequently compare the Connecticut wage laws to the federal corollary, the FLSA, to interpret statutory meaning under state law.  *See, e.g., State*

*v. AFSCME, AFL-CIO*, 777 A.2d 169, 179-80 (Conn. 2001) (comparing Conn. Gen. Stat. § 5-245, *et. seq.*, to 29 U.S.C. §§ 207, 213); *Roach v. Moran Foods, Inc.*, No. 2012 WL 1139073, at *9 (Conn. Super. Ct. Mar. 16, 2012) (in comparing a CMWA overtime payment methodology amendment to the FLSA equivalent, the court stated, "There is also no question that the Legislature could have completely rejected the FWW methodology when it amended § 31–76b(1) in 2003").

The amended statutory language in § 31-72 does not preclude recovery under both federal and state statutes, nor does the amendment's legislative history expressly address the purpose of making double damages mandatory. Notably, prior to the amendment the Supreme Court of Connecticut identified the purpose of § 31-72: to "provide[] penalties in order to deter employers from deferring wage payments once they have accrued." *Mytych v. May Dep't Stores Co.*, 793 A.2d 1068, 1073 (Conn. 2002); *see also Harty v. Canto Fitzgerald and Co.*, 881 A.2d 139, 156 (Conn. 2005) (stating § 31-72 "serves *both* a remedial and punitive or deterrent purpose").

Several factors militate in favor of concluding the General Assembly intended § 31-72 to remain punitive.   First, and chief among them, is the presumption that a legislature is aware of prior case law interpreting § 31-72 as punitive, but despite this, the General Assembly did not address that issue either in the statutory text or the legislative history, thereby validating the view of the majority of courts that it was and remains punitive.  *Id.*  On at least one occasion after the amendment passed, the Supreme Court of Connecticut continued to describe § 31-72 as providing penalties "to deter employers from deferring wage

payments once they have accrued." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 142 A.3d 227, 234 (Conn. 2016) (addressing § 31-72 penalties as it relates to the statute's remedial nature).   Second, the amendment is a procedural evidentiary change to the statute rather than a substantive change.   Third, the majority of courts in this district award damages under state and federal law.  Finally, an award of damages under both federal and state law is not uncommon.  *See, e.g., Herrera v. Tri-State Kitchen and Bath, Inc.*, No. 14-CV-1695(ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y Mar. 31, 2015) (awarding double liquidated damages under both federal and New York law because the plaintiff's damages application was uncontested due to the defendant's default).  This court finds that § 31-72 remains punitive and therefore an unpaid worker in Connecticut is entitled to liquidated damages under the FLSA and punitive damages under the CMWA.  Further, the Plaintiffs have offered persuasive evidence that the Defendant willfully failed to pay them wages due in violation of the CMWA and therefore rule that the Plaintiffs are entitled to extra-compensatory damages under both the FLSA and the CMWA.

The Court awards damages and enters judgment for the Plaintiffs in the amount of $175,664.24 under the FLSA and the CMWA measured by unpaid wages found by the CT-DOL audit as follows:

| Plaintiff | Liquidated Damages Under the FLSA | Liquidated Damages under the CMWA | Total Liquidated Damages |
|---|---|---|---|
| Julio Olivar | $9,289.55 | $9,289.55 | $18,579.10 |
| Alejandro Rodriguez | $27,204.32 | $27,204.32 | $54,408.64 |
| Cristian Ramirez | $15,172.50 | $15,172.50 | $30,345.00 |

| Misael Morales | $15,706.75 | $15,706.75 | $31,413.50 |
| Ulber Morales | $8,291.00 | $8,291.00 | $16,582.00 |
| Hisai Ramirez | $12,168.00 | $12,168.00 | $24,336.00 |
| TOTAL | | | $175,664.24 |

This judgment is without prejudice to the Plaintiffs filing a motion to supplement the judgment to add additional compensatory and liquidated damages for periods not covered by the CT-DOL audit supported by credible evidence, including citations to the prevailing minimum wage and an annotated computation of the wages sought.

### Conclusion

For the foregoing reasons, the Court grants partial summary judgment in Plaintiffs' favor and awards damages in the amount of $175,664.24.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 29, 2016